UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | |
|---|---|
| JANICE BJELOPETROVICH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-04393 |
| ) | |
| UNUM LIFE INSURANCE COMPANY ) | Honorable Elaine E. Bucklo |
| OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

**REPLY IN SUPPORT OF DEFENDANT'S
CROSS MOTION FOR SUMMARY JUDGMENT**

Defendant, Unum Life Insurance Company of America ("Defendant" or "Unum"), by and through its counsel, files this Reply in Support of its Motion for Summary Judgment.

**INTRODUCTION**

When all is said and done, the issue in this case can be summarized as follows: Applying the deferential arbitrary and capricious review standard, the Court must decide whether it was reasonable for Defendant to determine that when the Decedent completed the "Voluntary Term Life/AD&D Insurance Enrollment Form" ("Voluntary Life Enrollment Form") in March 2015, he was making an initial application for Voluntary Life coverage and was not merely "changing" existing Voluntary Life coverage. There is no dispute that, if he was making an initial application for Voluntary Life coverage, evidence of insurability was required; if he was making a "change" in coverage, evidence of insurability was not required.

**ARGUMENT**

**A. The Documents Completed by the Decedent Confirm that He Made His Initial Application for Voluntary Life Coverage in March 2015 and Not During His Initial Enrollment Period in 2014.**

Despite Plaintiff's efforts to meld the separate Basic and Voluntary life coverages into one coverage so she can argue that the Decedent was merely "changing" coverage, the Decedent apparently knew the difference between the coverages and understood that his Voluntary Life application was an initial application and not a change in coverage. At the top of the Voluntary Life Enrollment Form the Decedent completed on March 16, 2015, the Decedent was asked to designate the "Application Type." There were two choices: (a) "Initial Enrollment: To make initial elections"; and (b) "Annual Enrollment: To make changes to existing elections and/or information. The elections/information you indicate will replace the prior elections/information on file with Unum." [AR 25]  The Decedent specifically marked the Application Type as an "Initial Enrollment" and did *not* mark the box referencing changes to existing coverage.

The fact that the Decedent made an initial application for Voluntary Life coverage in March 2015 is also confirmed by the fact that he waived Voluntary Life coverage during his initial enrollment period in March 2014. This waiver was confirmed by the Decedent's employer in a telephone communication with Defendant. [AR 282 ("Tpc from Gretchen Bioty client manager, she spoke with Dawn Glascott the plan admin for PH [policyholder]. Dawn adv[ised] that EE [employee] had waived coverage prior to enrolling 4/1/2015, so she understands that EE would have been a late enrollee and the EofI [evidence of insurability] would have been needed.").] Plaintiff now objects to this as hearsay [Plaintiff's Response to Defendant's Local Rule 56.1 Statement of Undisputed Material Facts (Dkt. 29), para. 15], but this is not a valid objection because ERISA claim administrators are not bound by the Federal Rules of Evidence.

*See Black v. Long Term Disability Ins.,* 582 F.3d 738, 746 n. 3 (7th Cir. 2009) ("The Federal Rules of Evidence ... do not apply to an ERISA administrator's benefit determination, and we review the entire administrative record, including hearsay evidence relied upon by the administrator.") (citing *Speciale v. Blue Cross & Blue Shield Ass'n,* 538 F.3d 615, 622 n. 4 (7th Cir.2008). Plaintiff also purports to dispute the waiver, but she points to no contradictory evidence in the record and concedes that the only coverage the Decedent had before he completed the Voluntary Life Enrollment Form in March 2015 was the $15,000 Basic Life coverage. [Plaintiff Response to Defendant's Undisputed Facts, paras. 14, 15.] In an abundance of caution, Defendant has requested a copy of the Decedent's initial enrollment form from the employer. A copy is authenticated by and attached to the Declaration of Dawn Glascott, filed herewith. [Glascott Decl., Exhibit "1."] The initial enrollment form, dated March 14, 2014, shows the following: there is a pre-printed check mark in the box showing the Decedent was covered for $15,000 in "Basic Employee Life + AD&D"; the decedent did not check any of the boxes for "Voluntary Employee Life" or "Voluntary Employee AD&D"; and at the bottom of the form the Decedent expressly stated that he "Decided to Decline to Enroll" in various coverages, checking the boxes for "Voluntary Employee Life," "Voluntary Employee AD&D," and other benefits.[1] The record evidence is undisputed that the Decedent waived Voluntary Life coverage during his initial enrollment period.

**B. The Plan Documents Confirm that the Decedent Made His Initial Application for Voluntary Life Coverage When He Completed the Voluntary Life Enrollment Form in March 2015 and that Evidence of Insurability was Required.**

The fact that the Decedent made his initial application for Voluntary Life coverage and did not merely change that coverage in March 2015 is also confirmed by the plan documents.

---

[1] On March 2, 2017, Defendant provided Plaintiff's counsel with a copy of the waiver form, asking Plaintiff to withdraw his response to Defendant's statement that the Decedent waived Voluntary Life coverage during his initial enrollment period. Defendant received no response.

Plaintiff quibbles that the Basic Life and Voluntary Life coverages were part of the same umbrella master policy, but does not and cannot dispute that they are separate coverages, memorialized in separate documents, with entirely separate terms and purposes. At several points in her response to Defendant's undisputed facts, Plaintiff concedes that she is seeking benefits under the Voluntary Life document at AR 192-256. [Plaintiff's Response to Defendant's Undisputed Facts, paras. 4, 5, 10, 11, 21, 22.] Plaintiff virtually ignores that the Basic Life coverage is memorialized in a separate document at AR 47-94. She also points to nothing in the Voluntary Life document that incorporates the Basic Life document or the coverage provided in the Basic Life document or that would otherwise make them one type of coverage. In short, Basic and Voluntary Life coverages were provided via separate documents with separate terms and conditions. Whether they were separate "policies" or distinct sub-parts of an umbrella policy is beside the point. Indeed, contrary to Plaintiff's argument, the Voluntary Life Enrollment Form itself refers to the Voluntary Life coverage as being part of a separate "policy" stating in the title that it was provided under "Specialty Promotions, Inc. *Policy* #294387/Div 0001" (emphasis added).[2]

Plaintiff also contends that the policy documents do not refer to "Voluntary" or "Basic," ignoring the fact that the enrollment forms do use these terms as descriptors of the coverages provided in the policy documents. The form the Decedent completed during his initial enrollment period expressly referenced the $15,000 in coverage as "Basic Employee Life + AD&D" and the other life coverages as "Voluntary Employee Life" and "Voluntary Employee AD&D." [Glascott Decl., Exhibit 1.] The "Voluntary Term Life/AD&D Insurance Enrollment Form" expressly used

---

[2] Defendant's Statement of Undisputed Material Facts, paras. 9 and 10 points out that Voluntary Life coverage was provided under policy number 294387 [AR 192-256] as distinct from Basic Life coverage which was provided under policy number 294386 [AR 47-94].

the term "Voluntary" to refer to the coverage that the Decedent was first applying for in March 2015, [AR 25], and for good reason: Voluntary Life coverage was paid by the employees and was therefore *voluntary,* unlike the Basic Life coverage of $15,000 which was paid by the employer.

Finally, Plaintiff's entire argument hinges on the "change in coverage" provision in the Voluntary Life document. [AR 214] That provision only applied to an employee who was "applying for additional benefit units." [*Id.*] The phrase "benefit units" is unique to the Voluntary Life document and benefit units under that document could only be purchased in $10,000 increments. [AR 196] In contrast, the Basic Life document did not reference "benefit units" and only provided a fixed life insurance benefit of $15,000 [AR 49], which by definition under the Voluntary Life document was not a "benefit unit" because it was not a $10,000 increment. When the Decedent completed the Voluntary Life Enrollment Form in March 2015, he was not applying for "additional benefit units" because he had no "benefit units" at that time. Instead, he was making an initial application for Voluntary Life coverage, exactly as he stated on the Voluntary Life Enrollment Form. Because he was making an initial application for benefit units under the Voluntary Life coverage, he was required to submit evidence of insurability. [AR 25 (Voluntary Life Enrollment Form); 213 (Voluntary Life policy document).]

**C. As a Matter of Law, Defendant's Decision to Deny Plaintiff's Claim for Voluntary Life Benefits was Not Arbitrary and Capricious.**

In applying an arbitrary and capricious standard to an ERISA benefit determination, Defendant's decision does not need to be the only correct interpretation of the plan documents; it only needs to be a reasonable interpretation of the plan documents, even if it is one of several possible interpretations. *See, e.g., Marrs v. Motorola, Inc.,* 577 F.3d 783, 787 (7th Cir. 2009). Defendant's determination that the Decedent made an initial application for Voluntary Life

5

coverage when he completed the Voluntary Life Enrollment Form in March 2015 was not only a reasonable interpretation of the plan terms, but was mandated by those terms. It is undisputed that the Decedent did not submit evidence of insurability, as required by the plan terms. As a matter of law, Plaintiff is not entitled to Voluntary Life benefits and Defendant is entitled to judgment affirming its determination.

## CONCLUSION

For the reasons stated herein and in Defendant' previous submissions, Defendant is entitled to summary judgment.


Respectfully submitted,


<u>s/ Mark E. Schmidtke</u>
Mark E. Schmidtke, IN Bar No. 1733-45
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
56 S. Washington St., Suite 302
Valparaiso, IN 46383
Phone:  219-242-8668
Fax:  219-242-8669
mark.schmidtke@ogletreedeakins.com

Rebecca K. Bryant, IL Bar No. 6318098
Ogletree, Deakins, Nash, Smoak &
Stewart, P.C.
155 North Wacker Drive, Suite 4300
Chicago, IL 60606
Phone: 312.558.1252
Facsimile: 312.807.3619
rebecca.bryant@ogletreedeakins.com

**Attorneys for Defendant Unum Life Insurance Company of America**

6

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was filed electronically on March 8, 2017 and that service of same on all counsel of record will be made by the Court's CM/ECF system as follows:

John L. Quinn
jlquinn@grayslakelaw.com

/s/ Mark E. Schmidtke

29002388.1