IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Janice Bjelopetrovich,  )
                        )
        Plaintiff,      )
                        )
                        )
                        )
                        )
   v.                   )   No. 16 C 4393
                        )
UNUM life Insurance Company of )
America                 )
                        )
        Defendant.      )
                        )

Memorandum Opinion and Order

In this action, plaintiff Janice Bjelopetrovich seeks ERISA review of defendant's denial of life insurance benefits to which she claims she is entitled under her deceased husband Bozidar's employer-sponsored benefits plan.[1] Before me are the parties' cross-motions for summary judgment, which turn, the parties agree, on the resolution of a single dispositive issue: whether the terms of the plan required Bozidar to submit for defendant's approval an "evidence of insurability" form to obtain the coverage promising the benefits plaintiff seeks. Because I conclude, in light of the undisputed facts, that the only

---

[1] Plaintiff's complaint also includes counts for declaratory relief, breach of fiduciary duty, and state law breach of contract. She does not dispute that the state law claim is preempted by ERISA, however, and the remaining claims—which are based on the same allegations as her claim for benefits—do not survive summary judgment for the same reasons.

1

reasonable construction of the plan compels an affirmative answer to that question, I resolve the motions in defendant's favor.

I.

Plaintiff is the widow of Bozidar Bjelopetrovich, who was employed by Specialty Promotions from October 21, 2013, until his death on July 18, 2015. As a Specialty employee, Bozidar was eligible for coverage under the "Select Group Insurance Trust Policy No. 292000" (the "Group Plan"), issued by defendant. AR 47, 193.

The Group Plan encompasses, among other coverages, two distinct life insurance modalities, each of which is captioned "Life Insurance Plan." The terms and conditions of the first are set forth in a document titled Group Insurance Summary of Benefits Non-Participating (for ease of reference, the "Summary of Benefits") and identified by Identification Number 294386 001. *See* AR 47-94. The terms and conditions of the second are set forth in a separate document that is also titled Group Insurance Summary of Benefits Non-Participating (again, the "Summary of Benefits), but is identified by Identification Number 294387 001. *See* AR 192-256.[2] Defendant refers to the first component as the "Basic Life" policy and to the second as the

---

[2] Technically, the terms of the latter are contained in Amendment No. 1 to Group Identification No. 294387 001, which replaced, effective April 1, 2013. I note this merely for the sake of precision, and not because it has no bearing on the issues.

"Voluntary Life" policy. Plaintiff disputes this nomenclature, noting that the terms "Basic Life" and "Voluntary Life" do not appear in either Summary of Benefits, and further observing that both components are part of a single policy: the Group Plan. Terminology aside, however, it is clear from the face of the documents that the Group Plan establishes two distinct "Life Insurance Plan" coverages, each with its own terms and conditions as summarized in their respective "Benefits at a Glance" sections.[3]

The Benefits at a Glance section of the Basic Life component describes the terms of coverage for employees who satisfy a certain minimum hours threshold and have completed a 60-day waiting period. The employer pays the cost of this coverage, which promises a fixed benefit in the amount of $15,000.[4] AR 49. The Benefits at a Glance section of the Voluntary Life component describes similar threshold eligibility criteria (i.e., a minimum hours requirement and 60-day waiting period), but sets forth significantly different terms and

---

[3] For ease of reference, because defendant's nomenclature is consistent with other documents in the record, *see*, *e.g.*, AR 25 ("Voluntary Term Life/AD&D Insurance Enrollment Form"), and because I conclude, as explained below, that the nomenclature has no bearing on the substance of plaintiff's claim, I follow defendant's lead and refer to the two coverage modalities as "Basic Life" and "Voluntary Life."

[4] The fixed amount is decreased by specified percentages if the employee becomes insured at certain ages or reaches certain ages while insured, but these variations in benefit amounts are not relevant to any issue here.

conditions for coverage. *See* AR 195-96. First, the employee—not the employer—pays for Voluntary Life coverage. Second, the benefit amount is variable, not fixed, and is defined as "[a]mounts in $10,000 benefit units as applied for by you and approved by Unum. All amounts are rounded to the next higher multiple of $10,000, if not already an exact multiple thereof." *Id*. at 196. Third, the employee can change the benefit amount at any time after the initial election. The Benefits at a Glance section further provides, "EVIDENCE OF INSURABILITY IS REQUIRED FOR THE AMOUNT OF YOUR INSURANCE OVER: $140,000."

The section captioned "When Does Your Life Insurance Coverage Begin?" reiterates that evidence of insurability is required for benefits that exceed that amount, and it further provides that when evidence of insurability is required, coverage begins only after defendant has approved the employee's evidence of insurability form:

> This plan provides benefit units that you can choose. When you first become eligible for coverage, you may apply for any number of benefit units, however, you cannot be covered for more than the maximum benefit available under the plan.
>
> **Evidence of insurability** is required for any amount of life insurance over the amount shown in the LIFE INSURANCE 'BENEFITS AT A GLANCE" page.
>
> You pay 100% of the cost yourself for any benefit unit. You will be covered at 12:01 a.m. on the later of:
>
> — the first of the month coincident with or next following the date you are eligible for coverage, if you apply for

4

- insurance on or before that date, for any amount of insurance that is not subject to evidence of insurability requirements; or
- the first of the month coincident with or next following the date you apply for insurance, if you apply within 31 days after your eligibility date, for any amount of insurance that is not subject to evidence of insurability requirements; and
- the first of the month coincident with or next following the date Unum approves your evidence of insurability form, if you apply for insurance on or before your eligibility date or within 31 days after your eligibility date, for any amount of insurance that is subject to evidence of insurability requirements.

AR 213. Immediately following these provisions is a section captioned "When Can You Apply for Life Insurance Coverage if You Apply More Than 31 Days After Your Eligibility Date?", which sets forth the specific coverage requirements that apply in these circumstances. It provides:

> You can apply for coverage only during an **annual enrollment period**. Evidence of insurability is required for any amount of insurance.
>
> Unum and your Employer determine when the annual enrollment period begins and ends. Coverage will begin at 12:01 a.m. on the first of the month coincident with or next following the date Unum approves your evidence of insurability form.

*Id.* (bold in original)

The next provision is captioned "When Can You Change Your Life Insurance Coverage?" It provides:

> You can change your coverage by applying for additional benefit units at anytime (sic) during the plan year. You can increase your coverage any number of benefit units up to the maximum benefit available under the plan. Evidence of insurability is required for any amount of life insurance applied for during the plan year. ...

5

> You can also change your coverage by applying for additional benefit units during an annual enrollment period. You can increase your coverage any number of benefit units up to the maximum benefit available under the plan.
>
> Evidence of insurability is required for any amount of life insurance over the amount shown in the LIFE INSURANCE "BENEFITS AT A GLANCE" page.

AR 214.

The parties agree that Bozidar began his employment at Specialty on October 21, 2013. By the terms of the Basic Life provisions of the Group Plan, Bozidar's coverage in the amount of $15,000 began on the "[f]irst of the month coincident with or next following 60 days of continuous active employment," which in this case was January 1, 2014.[5] AR 49. By the terms of the Voluntary Life provisions of the Group Plan, Bozidar also became eligible to elect Voluntary Life coverage on that date. *See* AR 195, 213. Bozidar did not apply for Voluntary Life coverage during his initial enrollment period, i.e., on or within thirty-one days of that date.[6] Indeed, plaintiff admits that he did not

---

[5] Plaintiff disputes defendant's characterization of Bozidar's enrollment in the Basic Life plan as "automatic," but she agrees that Bozidar was "initially" covered in the amount of $15,000.

[6] Plaintiff denies and objects to defendant's statement that Bozidar waived Voluntary Life coverage, but her response essentially reiterates her general denial "that there is such a thing as 'Voluntary Life' coverage." As explained above, however, while plaintiff is correct that the Group Policy does not use that term, her assertion that "the Group Policy makes no distinction between anything which could be considered 'Voluntary Life' coverage and $15,000 of coverage is at odds with the face of the Group Plan documents.

6

seek coverage beyond the $15,000 fixed benefit in the Basic Life provisions at any time prior to the annual enrollment period of 2015.

On March 16, 2015, Bozidar executed the form "Voluntary Term Life/AD&D Insurance Enrollment Form" (the "Voluntary Life Enrollment Form"). AR 25. At the top of that form, under the heading "Application Type," he checked the box labeled, "Initial Enrollment: To make initial elections." He did not check the box marked, "Annual Enrollment: To make changes to existing elections and/or information." *Id*. Bozidar indicated that he was selecting $100,000 of coverage. *Id*. The enrollment form states: "If you DO NOT APPLY FOR coverage for you or your dependent(s) during your or their initial enrollment period, you will need to complete an Evidence of Insurability form for all amounts of coverage." *Id*. The parties agree that Bozidar did not submit evidence of insurability. Nevertheless, in April of 2015, Specialty deducted life insurance premiums for Voluntary Term Life/AD&D Insurance Coverage from Bozidar's bi-weekly paychecks. *See* Stipulation at ¶ 4 (DN 15).[7]

---

[7] The parties stipulate: "premiums were deducted from the decedent's bi-weekly paychecks in April 2015 for Voluntary Term Life/ADD&D Insurance coverage." I take this to mean that premiums were deducted only from Bozidar's April 2015 paychecks, and not from any other paychecks he may have received after April of 2015. If there is evidence suggesting otherwise, plaintiff has not pointed to it.

Bozidar died on July 18, 2015. On August 6, 2015, plaintiff submitted a claim for life insurance benefits under the Group Plan. Defendant approved her claim for $15,000 but denied her claim for $100,000, stating: "Since [Bozidar] enrolled for coverage more than 31 days after his eligibility date, he was required to submit an evidence of insurability form. He did not submit the form and coverage was not approved. As he was not covered under the policy at the time of his death, no benefits are payable." AR 289. After exhausting her administrative appeals, plaintiff filed this action pursuant to 29 U.S.C. § 1132(a)(1)(B).

II.

Summary judgment is appropriate if the evidence of record shows that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). I must examine the admissible evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"As a general rule, federal common law principles of contract interpretation govern the interpretation of ERISA plans." *Frye v. Thompson Steel Co., Inc.*, 657 F.3d 488, 493 (7th Cir. 2011) (quotation marks and citation omitted). Where the

language of an ERISA plan "gives the employee adequate notice of the administrator's discretion to shape the application, interpretation, and content of the plan's rules," the court will set aside the administrator's decision "only if it is arbitrary and capricious." *Black v. Long Term Disability Ins.*, 582 F.3d 738, 743-44 (7th Cir. 2009).

Plaintiff does not dispute that the "arbitrary and capricious" standard applies here.[8] She observes, however, that even under this deferential standard, the plan administrator is nevertheless "bound by the terms of the document." Pl.'s Opp. at 6 (citing *Cozzie v. Metropolitan Life Ins. Co.*, 140 F.3d 1104, 1108 (7th Cir. 1998) (granting summary judgment in insurer's favor). In her view, the administrator's interpretation of the Group Plan is unreasonable because "there is no basis in the Policy for distinguishing between 'Basic' and 'Voluntary' life insurance." *Id*. But it is plaintiff's construction that is at odds with the documents, as the respective Summaries of Benefits clearly define two distinct life insurance components. Contrary to plaintiff's argument, defendant's use of the terms "Basic Life" and "Voluntary Life" to describe and differentiate between

---

[8] The "Discretionary Acts" provision in the Voluntary Life Summary of Benefits "delegates to UNUM and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan." AR 252. This provision further states that "[b]enefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan." *Id*.

the two life insurance components the Group Plan comprises does not rewrite the policy.

Moreover, the administrator's interpretation of the Voluntary Life provisions as requiring Bozidar to submit evidence of insurability is entirely reasonable. Plaintiff argues that when Bozidar submitted the Voluntary Life Enrollment Form, he was simply effectuating a change in his previous coverage in accordance with the provisions captioned, "When Can You Change Your Life Insurance Coverage?" In her view, employees seeking additional benefits during an annual enrollment period were required to provide evidence of insurability only when their total benefits exceeded $140,000, which was not Bozidar's case. But when the Group Plan documents are read as a whole, it is clear that these change-of-coverage provisions apply only to employees who have previously elected Voluntary Life coverage.

Indeed, plaintiff's characterization of Bozidar's submission of the Voluntary Life Enrollment Form as seeking to effectuate a "change" in his Basic Life coverage is at odds with the documents in several respects. First, the Basic Life modality, which covered Bozidar in the fixed amount of $15,000 starting January 1, 2014, does not authorize or otherwise provide for employee-initiated changes in coverage. *See generally* AR 47-94. Only the Voluntary Life modality, which defines a variable benefit and allows employees to select—and

later to change—their benefit amount by pre-set "benefit units" (a concept unique to the Voluntary Life provisions) contemplates such changes. Because Bozidar had only Basic Life coverage at the time he submitted the Voluntary Life Enrollment Form, there simply was nothing for him to "change."

Second, applying the change-of-coverage provisions to Bozidar's application for initial enrollment in Voluntary Life coverage would render superfluous the section captioned, "When Can You Apply For Life Insurance Coverage If You Apply More Than 31 Days After Your Eligibility Date?" Yet general contract principles require that "[a]ll language of a plan should be given effect without rendering any term superfluous." *Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 838 (7th Cir. 2012). In the absence of preexisting Voluntary Life coverage, the only thing Bozidar could do during the 2015 annual enrollment period was to apply, in the first instance, for that coverage. Because by that point, his 31-day initial enrollment period had long since expired, the initial-enrollment provisions applied, and "[e]vidence of insurability [was] required for any amount of insurance." AR 213. Because Bozidar did not submit an evidence of insurability form, the administrator correctly determined that his coverage under the Voluntary Life component was never triggered.

III.

For the foregoing reasons, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Dated: May 17, 2017